UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| SELECT OILFIELD SERVICES, LLC | * | CIVIL ACTION |
|---|---|---|
| VERSUS | * | NO. 23-2431 |
| TOTAL MARINE SERVICES OF JEFFERSON, INC. | * | SECTION "E" (2) |

## ORDER AND REASONS

Pending before me are Plaintiff Select Oilfield Services, LLC's Motion to Compel and Defendant Total Marine Services of Jefferson, Inc.'s Motion to Compel. ECF Nos. 22, 23. Both parties timely filed Opposition Memoranda and Total Marine filed a Reply Memorandum. ECF Nos. 26, 27, 29. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, both Motions to Compel are GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.   BACKGROUND**

Plaintiff Select Oilfield Services, LLC's self-propelled spud barge (the S/B DRAKE) sustained damage during a fire on April 25, 2022, while being repaired by Defendant Total Marine Services of Jefferson, Inc. ECF No. 1 ¶¶ 5-7. Plaintiff moved the S/B DRAKE to another repair yard, which completed repairs from the fire on May 31, 2023. *Id*. ¶¶ 8-9. Plaintiff filed this suit to recover loss of use damages[1] and for the return of certain property. *Id*. ¶¶ 12-20.

---

[1] Plaintiff indicates Defendant's insurer has paid for the vessel repairs caused by fire. ECF No. 22-1 at 1.

1

A. **Plaintiff's Motion to Compel**

During discovery, Plaintiff sought information regarding all employees who performed work on the S/B DRAKE. Request for Production No. 26 reads:

> Please produce the personnel files for all TMS workers who performed any repair work on the DRAKE at the TMS yard/facility between the time the DRAKE was delivered to the TMS yard/facility and the Incident.

ECF No. 22-3 at 2. Defendant responded:

> Total Marine objects in that the Request is overbroad and unduly burdensome in that the Request is not reasonably limited by scope of time or subject matter. Further, the Request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In further objecting, the request is so overbroad and unduly burdensome that it is harassing. Subject to those objections, Total Marine will produce the personnel file for the employee [Wilfredo Flores] directly involved in the Incident. Please see documents produced herein bearing Bates Nos. Total Marine 001236 - 001245.

*Id*. After a Rule 37 conference, Defendant produced personnel files for two more employees, Gabriel Garcis and Judas Valasquez, but refused to produce personnel files of the other four workers. ECF No. 22-1 at 4. Plaintiff seeks an order compelling the files of the other four workers and an order ensuring that Defendant has produced full and complete personnel files, including any training and certification information, for Flores, Garcis and Valasquez. It argues that Defendant's safety manual includes a provision for "Fire Prevention/Firewatch/Fire Fighting" training, which requires "[e]ach employee . . . be trained in the use of fire extinguishers, alarm systems, evacuation routes, re-assembly areas, and the types of fires," and it seeks to confirm whether the employees performing work were so trained. *Id*. at 5, 6-7.

In Opposition, Total Marine argues that Plaintiff did not request training records, but rather, requested only the personnel files. ECF No. 26 at 1. It further argues that employees who worked on the S/B DRAKE for limited time periods before the fire have no relevance. *Id*. at 2. It asserts that it has produced the personnel files, including any training records contained within the

personnel files, for all three employees who were working on the vessel on the day of the fire as well as employee acknowledgements and firefighting training records for the four employees involved in efforts to extinguish the fire. *Id.* Total Marine concludes by asserting that, despite Plaintiff's limited request for personnel files, it searched for relevant training records, some of which were found and produced. *Id*. at 3.

### B. <u>Defendant's Motion to Compel</u>

Defendant Total Marine seeks to compel various financial documentation supporting Plaintiff's claim for loss of use, including tax returns and the required FED. R. CIV. P. 26(a)(1)(iii) disclosures. ECF No. 23. Total Marine issued Interrogatory No. 11, which reads:

> Please give an itemized list of all losses, costs, expenses and/or damages of any kind that You claim to have incurred as a result of the Incident and which You are currently seeking to recover in this litigation from Total Marine.

Plaintiff responded:

> Select objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, the work-product privilege, or any other applicable privilege. Select also objects to this Interrogatory to the extent it calls for information protected by the expert and/or consultant's privilege, whereby Select has yet to determine whether expert testimony will be presented at trial in connection with damages claims. Expert disclosures are not yet due under the Court's Scheduling Order (Rec. Doc. 14). Subject to the foregoing objections and without waiving them, Select's primary claim is for loss of use damages, and Select has provided documentation supporting such damages, as well as advised that such will be supported through the testimony of one or more representatives of Select, including Mr. Barry Salsbury. Select also seeks replacement cost and loss of use damages for the equipment TMS' either lost, stole, or allowed to be lost or stolen through its fault. See SOS_000005 regarding the "Items miss off the M/V DRAKE." Select's damages are in excess of $500,000; and Select reserves the right to amend and/or supplement this response, including with expert reporting, as per the Court's Scheduling Order (Rec. Doc. 15).

ECF No. 23-2 at 12-13. The relevant Requests for Production of Documents and responses read:

> **REQUEST FOR PRODUCTION NO. 42:**
>
> Please provide any profit and loss statements regarding the Drake for the five years prior to the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Select objects to this Request as overly broad in time. Subject to this objection, Select does not have in its possession a document specifically responsive to this Request for Production but will be providing evidence of the loss of use damages for TMS' fault in causing a fire for the DRAKE through the documents previously produced, through testimony from Mr. Barry Salsbury, and potentially an economist. Select reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 43:**

Please produce Your federal tax return for the years 2020, 2021, 2022, and 2023.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Select objects to this Request for Production as unduly burdensome, not proportional to the needs of the case, and as intending to harass Select. This information is confidential and proprietary and is not needed to establish the loss of use of the DRAKE and the damages resulting therefrom due to TMS' negligence.

**REQUEST FOR PRODUCTION NO. 44:**

All documents containing any accountings or calculations of Your net income (net profit or loss before income taxes) that You claim You would have earned but for the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Select objects to this Request for Production as unduly burdensome, not proportional to the needs of the case, and as intending to harass Select. This information is confidential and proprietary and is not needed to establish the loss of use of the DRAKE and the damages resulting therefrom due to TMS' negligence. Subject to and without waiving the same, Select does not have in its possession a document specifically responsive to this request but will be providing evidence of the loss of use damages for TMS' fault in causing a fire for the DRAKE through the documents previously produced, through testimony from Mr. Barry Salsbury, and potentially an economist.  Select reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 45:**

Please produce any and all documents evidencing the profit margin of the Drake for the years 2020, 2021, 2022, and 2023.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Select does not have in its possession a document specifically responsive to this Request for Production but will be providing evidence of the loss of use damages for TMS' fault in causing a fire for the DRAKE through the documents previously

produced, through testimony from Mr. Barry Salsbury, and potentially an economist. Select reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 46:**

Please produce any and all documents evidencing the return on investment of the Drake for the years 2020, 2021, 2022, and 2023.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Select objects to this request as overly broad, irrelevant, and not proportional to the needs of the case. Select does not have in its possession a document specifically responsive to this Request for Production but will be providing evidence of the loss of use damages for TMS' fault in causing a fire for the DRAKE through the documents previously produced, through testimony from Mr. Barry Salsbury, and potentially an economist. Select reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 47:**

Please produce any and all documents evidencing the gross revenue You received due to the Drake for the years 2020, 2021, 2022, and 2023.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Select does not have in its possession a document specifically responsive to this Request for Production but will be providing evidence of the loss of use damages for TMS' fault in causing a fire for the DRAKE through the documents previously produced, through testimony from Mr. Barry Salsbury, and potentially an economist. Select reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 48:**

Please produce any and all documents evidencing the net revenue You received due to the Drake for the years 2020, 2021, 2022, and 2023.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Select does not have in its possession a document specifically responsive to this Request for Production but will be providing evidence of the loss of use damages for TMS' fault in causing a fire for the DRAKE through the documents previously produced, through testimony from Mr. Barry Salsbury, and potentially an economist. Select reserves the right to amend and/or supplement this response.

ECF No. 23-2 at 41-44. Total Marine argues that the requested financial documents are not privileged, are relevant and are proportional to the need of the case. ECF No. 23-1 at 3-4. It argues

Plaintiff should have provided its computation of damages and evidentiary materials upon which same is based as part of its Rule 26(a)(1)(iii) disclosure, and the requested documents contain necessary information given that Plaintiff's claim is based entirely on lost revenues and profits. *Id*. at 5. Total Marine thus requests that Plaintiff produce its financial documents reflecting net income for 2019-2023 as well as tax returns for 2020-2023. *Id*. at 6. Total Marine contends that Plaintiff's representative has testified inconsistently, and these documents are the only available source to obtain reliable information. *Id*. at 8. Total Marine highlights Plaintiff's principal's sworn testimony at a bankruptcy court's § 341 meeting in which he testified that Select did 100% of its work for related entities at a fixed rate agreement of $30,000 per month but now asserts that it generated $45,000 per month from the S/B DRAKE alone. *Id*. at 9.

In Opposition, Select argues that Total Marine is seeking to require production of sensitive financial information that bears no relation to the issues in this case because a loss of use claim is based on lost net profit, which is measured by the ship's charter rate, less the variable or incremental expenses, discounted by the probable utilization rate, and that will be provided by Plaintiff's principal and expert in the damages report. ECF No. 27 at 1-2. For that reason, Select argues, financial discovery regarding the entire company, not just the S/B DRAKE, is not relevant. *Id*. at 3-4. Select contends that it owns multiple vessels, and thus, its entire company information has no relevance. *Id*. at 4-5. Select repeatedly argues that it need not respond to the interrogatories regarding damages because it will provide an expert report. *Id*. at 5-8.

In Reply, Total Marine argues that both parties are entitled to all relevant information, and Plaintiff must disclose its damages computations and is not entitled to filter relevant information through its expert or representative. ECF No. 29 at 1-2. Total Marine argues that complete financial information and tax returns are relevant because same include depreciation schedules and

6

asset listings, which enables it to assess the loss of use claim, they provide insight into the income-generating activities and associated expenses for the asset in question, and may contain relevant information in disclosures or footnotes regarding the loss of use of S/B/ DRAKE. *Id*. at 3-5.

## II. APPLICABLE LAW AND ANALYSIS

### A. The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[2] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[3] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[4] If relevance is in doubt, a court should allow discovery.[5]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would

---

[2] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[3] *Id*. (citations omitted).
[4] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[5] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'r, Inc*., 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).

7

suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. advisory committee notes to 2015 amendment.  Thus, it bears the burden of making a specific objection and coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[6]

"The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." FED. R. CIV. P. advisory committee's notes to 2015 amendment.  Rule 26(b)(2)(C)(i)–(iii) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

### B. Duties in Responding to Discovery

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[7]  "Discovery by

---

[6] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).
[7] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).

interrogatory requires candor in responding. . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information."[8]

Although a party is not required to make an extensive investigation in responding to an interrogatory, it must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[9] The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper.[10] Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully [that question],' a party's obligation under Rule 33 is satisfied."[11]

Likewise, a party must provide full and complete responses to requests for production within thirty days after being served same unless otherwise stipulated or ordered. FED. R. CIV. P. 34(b)(2)(A). This production must occur "no later than the time for inspection specified in the request or another reasonable time specified in the response." FED. R. CIV. P. 26(a)(1)(A)(ii); 34(a)(1); FED. R. CIV. P. 34(b)(2)(B).[12] A party responding to discovery must produce responsive documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody or control. FED. R. CIV. P. 26(a)(1)(A)(ii); 34(a)(1). For each request, the respondent must either state that the inspection or production will be permitted or state with specificity the grounds for objection, including the

---

[8] *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977).
[9] *Lopez*, 327 F.R.D. at 579 (citing 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013)).
[10] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).
[11] *Id.* (citing *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. 11–542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010))).
[12] A party has "control" over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty. *Becnel v. Salas*, No. 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018) (citations omitted); *Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted).

reason. FED. R. CIV. P. 34(b)(2)(B). Any objections "must state whether any responsive materials are being withheld on the basis of that objection," and if the responding party objects, it must specify the objectionable part and permit inspection of the rest. FED. R. CIV. P. 34(b)(1)(C). Objections interposed without also clearly indicating whether any document or information is being withheld are improper.[13] All responses must clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing same.[14]

### C. Objections Must be Stated with Specificity

The Federal Rules of Civil Procedure take a "demanding attitude toward objections,"[15] and courts have long interpreted the rules to prohibit general, boilerplate objections.[16] Boilerplate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request.[17] General objections refer to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in a given set of discovery requests.[18]

---

[13] *Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, No. 13-2809, 2015 WL 269051, at *4 (E.D. La. Jan. 21, 2015).
[14] *Id.*
[15] 8B CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2173 (3d ed. 2021).
[16] *See, e.g.*, *Chevron,* 2015 WL 269051, at *3 (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.") (citation omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection.") (citations omitted).
[17] *See Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, No. 20-42, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (citation omitted) (providing examples for boiler plate language, such as "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case."). Objections are deemed "boilerplate" when they are identical and not tailored to the specific discovery request. *Amazing Ins., Inc. v. DiManno*, No. 19-1349, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) (citation omitted).
[18] *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 n.16 (3d Cir. 2009).

10

A general objection untethered to specific requests (and is thus also a boilerplate objection) is improper.[19]

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[20] The party objecting must state how the objection "relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[21] Any objection must clearly state how the information sought is not relevant to any claim or defense, or how the request is overbroad, burdensome or oppressive.[22]

### D. **Plaintiff's Motion to Compel Personnel Files, Including Training Records**

Initially, Defendant's objection to the request for seven employees' personnel files on the basis of overbreadth and undue burden due to lack of time and scope limitation, relevance and "not reasonably calculated to lead to the discovery of admissible evidence, are overruled as improper general objections. Setting aside the citation to the outdated discovery standard,[23] Defendant has

---

[19] *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (citation omitted) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objections on those grounds." (internal quotations omitted)).
[20] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).
[21] *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (quotations omitted).
[22] *Chevron Midstream Pipelines v. Settoon Towing, LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051 at *3 (E.D. La. Jan. 20, 2015) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.") (citation omitted).
[23] Over eight years ago, Congress jettisoned that language: "The 2015 amendments to Rule 26 deleted from the definition of relevance information that appears 'reasonably calculated to lead to the discovery of admissible evidence' because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery' and 'has continued to create problems' given its ability to 'swallow any other limitation on the scope of discovery.'" FED. R. CIV. P. 26,

not articulated how the information sought in the request is not relevant to any claim or defense, or how the request is overbroad, burdensome. And given that the three personnel files that were produced consisted of approximately ten pages each, it is difficult to see how the request is overly broad or unduly burdensome. The relevance objection is likewise overruled as the relevance of the training and experience of the workers performing work at the time of the fire is clear.

Personnel files, however, have a specific discovery test because they implicate privacy concerns distinct from those presented by custodial files, are more likely to contain personal or embarrassing material, reflect sensitive matters such as alimony or child support garnishment, tax records, drug test results, and may present thorny issues of corporate policy in that many personnel files are not shared with employees or third parties.[24] Courts in this circuit generally allow for the disclosure of personnel files only when the personnel files contain material highly relevant to the case and were requested with particularity, because the information in personnel records invariably contains a significant privacy interest.[25] Thus, when an employee's personnel file is relevant, proportional and particularized, discovery is appropriate.

In resolving a dispute regarding personnel files, the court is required to balance the competing interests of the parties in a considered manner, with regard for the breadth of the federal discovery rules. Privacy interests are not to be weighed lightly in this equation, and special concerns about the privacy rights of the individuals involved must be considered. "[A] court ruling on the discoverability of the personnel files of non-party employees must balance privacy and

---

advisory committee's note to 2015 amendment. The current parameters for permissible discovery, as established by Rule 26(b)(1), extend to that which is non-privileged, relevant to claims and defenses in the case and within Rule 26's proportionality limits.

[24] *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (noting that all or some parts of a personnel file could be central to plaintiffs' effort to prove pretext in a discrimination case); *see also In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. 32, 35-36 (E.D. La. 2016) (citations omitted).
[25] *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. at 37-38.

discovery interests, as informed by *Frankenhauser*, and give appropriate weight to the 'special concerns' presented by personnel files in each case."[26]

After conducting this balance, it is clear that the training records of Defendant's employees performing work on the S/B DRAKE are relevant to the claims and defenses in this case and must be produced, regardless of whether these documents are located in Total Marine's formal "personnel file" or some other employment-related file (e.g., "training file" or "education file") maintained by Total Marine. Although it *appears* that Defendant has produced same as to all seven employees, its discovery responses and Opposition Memorandum are ambiguous. Accordingly, Defendant will be required to provide a supplemental written response that confirms that it has undertaken all reasonable efforts to locate responsive training documents, that it has produced all training documents relating to fire safety that it located for all seven employees, and that it has not withheld any fire safety-related training documents for these employees.

Movant does not explain, however, how the general personnel files for Total Marine employees who had no contact with the S/B DRAKE on the date of the incident would have any possible relevance to a claim or defense in this case. Accordingly, movant has not made the particularized showing necessary to justify production of the personnel files of employees who did not work, or had no involvement, with the S/B DRAKE on the date of the fire. Absent this required showing, production of these employees' personnel files is not appropriate.

### E. Defendant's Request for Financial Information, Including Tax Returns

Initially, Plaintiff has objected to numerous requests on the basis that such documents do not exist.[27] The court cannot compel a party to produce documents that do not exist."[28] Of course,

---

[26] *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. at 36 (citations and quotations omitted).
[27] *E.g.*, Responses to Request for Production Nos.44, 45, 46, 47, and 48.
[28] *Butler v. La. Dep't of Pub. Safety & Corrs.*, No. 12-420, 2014 WL 3867552, at *1 (M.D. La. Aug. 6, 2014); *accord Payne v. Forest River, Inc.*, No. 13-679, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order

if the movant has or acquires evidence that producing party's responses are incomplete or that their affidavit or representations are false, then other remedies may be sought by motion.[29] For instance, if a party attempts to offer documentary evidence that he did not produce during discovery, he may be barred from using such evidence in future motions or at trial.[30] When an attorney, as an officer of the court, represents that documents do not exist, courts can require a certification or "confirmation" that the discovery at issue does not exist.[31]

Plaintiff has also objected on the basis that the requests are unduly burdensome, not proportional to the needs of the case, and constitute harassment. These general objections fail to explain *how* these requests are allegedly unduly burdensome, not proportional and harassing, and

---

the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party."); *Callais v. United Rentals N. Am., Inc*., No. 17-312, 2018 WL 6517446, at *7 (M.D. La. Dec. 11, 2018) (same); *Terral v. Ducote*, No. 15-2366, 2016 WL 5017328, at *2 (W.D. La. Sept. 19, 2016) (same).

[29] *Henderson v. Compdent of Tenn., Inc*., No. 97-617, 1997 WL 756600, at *1 (E.D. La. Dec. 4, 1997) (denying motion to compel based on representation that documents that do not exist and noting other remedies are available if representation is untrue).

[30] *See* FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *James v. Haven Homes Se., Inc.*, No. 08-770, 2011 WL 777971, at *3 (M.D. La. Feb. 28, 2011) (citing FED. R. CIV. P. 37(c) in determining that certain exhibits are inadmissible as Plaintiff cannot establish that they were produced); *see also Brown v. AT&T*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. Feb. 15, 2017) (holding that Plaintiff was required to disclose emails used to support his claims during discovery pursuant to Rule 26(a) and thus, under Rule 37(c)(1), was prohibited from using the emails to support his summary judgment as he provided no substantial justification not disclosing the emails); *Henderson v. Turner*, No. 11-39, 2013 WL 504925, at *2 (M.D. La. Feb. 8, 2013) (excluding any evidence in an exhibit that was not disclosed to defendants during discovery, unless the evidence qualifies as a document that can be obtained from defendants); *ContentGuard Holdings, Inc. v. Amazon, Inc.*, No. 13-1112, 2015 WL 6886957, at *2 (E.D. Tex. Nov. 7, 2015) (excluding evidence in an expert report that was not produced to a party prior to the close of discovery).

[31] *Nguyen v. La. State Bd. of Cosmetology*, No. 14-80, 2016 WL 67253, at *2 (M.D. La. Jan. 5, 2016) (requiring plaintiff to "confirm that the requested information does not exist"); *see also Callais.*, 2018 WL 6517446, at *7 (ordering qualified representative to provide a sworn certification that no responsive documents exist); *Brookshire v. Jackson Pub. Schs*., No. 13-772, 2015 WL 11018443, at *1 (S.D. Miss. May 8, 2015) ("If the document does not exist, then Defendants are to certify that the document does not exist."); *Beasley v. First Am. Real Estate Info. Servs., Inc*., No. 04-1059, 2005 WL 1017818, at *4 (N.D. Tex. Apr. 27, 2005) ("[D]efendant is entitled to an unequivocal representation . . . that the documents specified in this request for production do not exist.").

are therefore overruled.[32]  Plaintiff's objections based on the confidential and proprietary nature of the information may be addressed through entry of a protective order.[33]

Plaintiff also argues that these discovery requests are premature.  It does not argue that the requests constitute contention interrogatories that need not be answered at this time.[34]  Simply because the court's scheduling order includes a deadline for expert reports, however, does not mean that the parties may delay disclosure of damages information until expert reports are delivered.[35]  Thus, Plaintiff's prematurity argument seeking to delay damages discovery until after delivery of its expert report is unsupported.[36]  Damages discovery begins with initial disclosures, which may be supplemented as necessary.[37]  The requirements of Rule 26 would be meaningless if parties did not have to disclose their damages calculations until the close of discovery and exchange of reports.

Plaintiff's objection that the financial information sought is not relevant is overruled.  Loss of use damages in a maritime tort action are determined by using the ship's charter rate, less

---

[32] General objections refer to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in a given set of discovery requests.  *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 134 n.16 (3d Cir. 2009).  A general objection untethered to specific requests (and is thus also a boilerplate objection) is improper.  *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (citation omitted) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objections on those grounds." (internal quotations omitted)).

[33] A sample protective order is available at http://www.laed.uscourts.gov/judges-information/judge/honorable-donna-phillips-currault.

[34] *See Layne Heavy Civ., Inc. v. Healtheon, Inc.,* No. 17-9496, 2018 WL 11457410, at *4 (E.D. La. Sept. 4, 2018) (noting that delayed responses may be appropriate in cases where an anticipated expert report will touch on the contentions at issue) (citations omitted).

[35] *Architectural Granite & Marble, LLC v. Pental*, No. 20-295, 2023 WL 121996, at *6 (N.D. Tex. Jan. 6, 2023).

[36] *See LW Air I, L.L.C. v. Air 7, L.L.C.,* No. 16-546, 2017 WL 3209398, at *1 (N.D. Tex. Apr. 20, 2017) (Stickney, J.) (holding that "a party must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by the disclosing party[.]" (quoting FED. R. CIV. P. 26(a)(1)(A)(iii)); *see also Tendeka, Inc. v. Glover*, No. 13-1764, 2015 WL 2212601, at *16 (S.D. Tex. May 11, 2015) ("A party claiming damages has the obligation, when it makes its initial disclosures, to disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be.") (quotation omitted)).

[37] *See* FED. R. CIV. P. 26(a)(a)(A)(iii) (requiring a computation of each category damages claimed); 26(e) (requiring parties to supplement their initial disclosures under Rule 26(a) if they learn the information previously disclosed is incomplete or incorrect and the new information has not otherwise been made known to the other parties); 26(e)(2) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the experts deposition.").

variable or incremental expenses that would have been required to perform the charter, discounted by the probable utilization rate.[38] Plaintiff must also establish a market or that the vessel would have been used during that time.[39] The income generated by and expenses associated with the vessel's prior use are thus appropriate evidence to consider in assessing loss of use damages. Past revenue generated by the vessel also serves to inform the potential utilization rate. And in determining the applicable charter rate, courts typically employ the three voyage rule,[40] with some exceptions.[41] The income from these voyages would presumably be reflected in income statements and/or tax returns. Given Plaintiff's responses denying the existence of profit and loss statements, income statements reflecting net or gross revenue or profits, profit margin or return on investment documents, the only possible source for Defendant to obtain existing financial information appears to be tax returns. This is particularly important given Defendant's assertion that Plaintiff's claimed loss of use damages for the S/B DRAKE alone exceeds its representative's prior sworn bankruptcy testimony regarding income for the entire company.

Tax returns are not privileged information shielded from discovery.[42] But like personnel files, the Fifth Circuit recognizes that tax returns are "highly sensitive documents" and advises that courts should be "reluctant to order their routine disclosure as a part of discovery."[43] Disclosure

---

[38] *Marine Transport Lines, Inc. v. M/V Tako Invader*, 37 F.3d 1138, 1140 (5th Cir. 1994) (quoting *Kim Crest, S.C. v. M.V. Sverdlovsk*, 753 F.Supp. 642, 649 (S.D. Tex. 1990)).
[39] *Inland Oil & Transp. Co. v. Ark-White Towing*, 696 F.2d 321, 326-27 (5th Cir. 1983) (holding that loss of use was not proved with reasonable certainty where there was "no evidence that the . . . barges would have been used during this time span.") (emphasis in original) (abrogated on different grounds by *City of Milwaukee v. Cement Div., Nat. Gypsum Co*., 515 U.S. 189 (1995)); *Johnson v. Otto Candies, Inc*., 828 F.2d 1114, 1119 (5th Cir.1987).
[40] The three voyage rule looks to the charter hire rate for the voyage immediately preceding the incident, the charter hire rate during the casualty, and the charter hire rate of the first voyage succeeding the casualty and averages them. *See Marine Transport Lines, Inc.,* 37 F.3d at 1140-41; *Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.,* 747 F.2d 995, 1001 (5th Cir. 1984) (noting the "time honored rule in maritime cases that a proper method of determining lost detention profits is to seek a fair average based on a number of voyages before and after").
[41] *Todd Shipyards v. Turbine Serv., Inc.,* 674 F.2d 401, 424 (5th Cir. 1982) (holding court must factor the vessel's historical operational rate into analysis).
[42] *See F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995).
[43] *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc*., 2 F.3d 1397, 1411 (5th Cir. 1993).

of tax returns in discovery is appropriate when the requesting party demonstrates that the returns are (1) relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.[44] Once the moving party has shown relevance, "the burden shifts to the party opposing production to show that other sources exist from which the information contained in the income tax returns may be readily obtained."[45]

While there is a general reluctance to order the production of tax returns, production is warranted in this case in light of Plaintiff's damages claim and Defendant's (and its expert's) need to fully analyze damages. Further, the production of tax returns may be accomplished pursuant to a protective order, providing appropriate confidentiality and use restrictions. Indeed, courts regularly recognize that financial information, including tax return and statements of income from all sources, is subject to discovery when relevant to a claim for damages,[46] even when the information is reflected in a consolidated tax return including a non-party.[47]

Plaintiff has objected to the time period at issue for numerous requests. The fire occurred in April 2022. It is reasonable to require production of financial information for the prior two full

---

[44] *SEC v. Cymaticolor*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985) (citing *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D. N.Y. Aug. 31, 1979)).
[45] *F.D.I.C.*, 43 F.3d at 172.
[46] *See U.S. ex rel. Univ. Loft Co.*, No. 14-528, 2016 WL 9462335, at *9 (W.D. Tex. June 29, 2016); *Best Western Intern., Inc. v. Bhagirath*, No. 12–0121, 2013 WL 2147208, at *3 (M.D. La. May 14, 2013)); *see also EEOC v. Denham Springs Pub. Co.*, No. 10-614, 2012 WL 262268 (E.D. La. Jan. 27, 2012) (denying in part motion to compel and ordering production of "annual reports, financial statements and federal income tax returns"); *Ridgecrest Realty, LLC v. Graphic Packaging Int'l, LLC*, No. 20-01351, 2022 WL 2825822, at *4 (W.D. La. Mar. 23, 2022) (granting request for tax returns that show the value of an asset at issue and depreciation, and noting that the returns also provide verified figures); *Lewis v. Shafer Prof. Res., Inc.*, No. 19-353, 2021 WL 2216626, at *1 n.2 (S.D. Tex. Jan. 22, 2021) (noting that information contained in the tax returns is not otherwise readily available obtainable through other means and therefore, the need is compelling) (citing *Rafeedie v. L.L.C., Inc.*, No. 10-743, 2011 WL 5352826, at *2 (W.D. Tex. Nov. 7, 2011); *Ins. Safety Consultants LLC v. Nugent*, No. 15-2183, 2017 WL 10701817, at *4 (N.D. Tex. Mar. 21, 2017).
[47] *Channel Control Merchants, LLC v. Davis*, No. 11-21, 2012 WL 1365743 (S.D. Miss. Apr. 19. 2012) (holding that claim for lost profits provided compelling need for tax returns and financial statements, even when that information included tax information of non-party subsidiary).

years (i.e., 2020 and 2021) immediately preceding the fire as well as the year at issue and return of the vessel (2022 and 2023).

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Plaintiff's Motion to Compel is GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHER ORDERED that Defendant's Motion to Compel is GRANTED IN PART AND DENIED IN PART, subject to entry of a protective order, as stated herein. Plaintiff is directed to provide a certification that the financial documents requested but not produced do not exist.

IT IS FURTHER ORDERED that the supplemental responses, productions and certification required herein be provided within fourteen (14) days.

New Orleans, Louisiana, this ___19th___ day of April, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE